1

**GREENE BROILLET & WHEELER, LLP**
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

2

3

4

MARK T. QUIGLEY, State Bar No. 123228
IVAN PUCHALT, State Bar No. 245128

5

Attorneys for _____ Plaintiff _____

6

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

12

MICHAEL S. MILLER, M.D.,

Plaintiff,

13

vs.

14

15

UNUM LIFE INSURANCE
COMPANY OF AMERICA; THE
PAUL REVERE LIFE INSURANCE
COMPANY;and DOES 1 through 10,
inclusive,

16

17

18

Defendants.

19

20

21

22

CASE NO.  SA CV 08-1420 JVS
(RNBx)
Complaint: 12-17-08
**District Judge: James V. Selna**
**Magistrate Judge: Robert N.**
**Block**

**SECOND AMENDED**
**COMPLAINT FOR DAMAGES**

1. **Breach of Written**
   **Contract**
2. **Breach of the Implied**
   **Covenant of Good Faith and**
   **Fair Dealing**
3. **Breach of Fiduciary**
   **Duties**
4. **Declaratory Relief**

**DEMAND FOR A TRIAL BY JURY**

23

24

25

        COMES NOW the plaintiff, MICHAEL S. MILLER, M.D., and for causes

26

of action against defendants, and each of them, complains and alleges as follows:

27

////

28

////

-1-
SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

## JURISDICTION AND VENUE

1.    Plaintiff alleges that at all times mentioned herein, defendants UNUM LIFE INSURANCE COMPANY OF AMERICA and DOES 1 -5 (hereinafter referred to as "UNUM") were and now are corporations organized and existing under and by virtue of the laws of the State of Maine, and said that defendants were and now are authorized to do and are doing business of insurance in the State of California and have regularly conducted the business of insurance in the State of California. Further, that UNUM maintains its principal place of business in Chattanooga, Tennessee.

2.    Plaintiff alleges that at all times mentioned herein, THE PAUL REVERE LIFE INSURANCE COMPANY and DOES 6-10, hereinafter referred to as "PAUL REVERE", were and now are corporations organized and existing under the laws of the State of Massachusetts. Furthermore, "PAUL REVERE" maintains its principal place of business in Worcester, Massachusetts. Furthermore, Plaintiff is informed and believes that said defendants became a subsidiary and/or otherwise a part of defendant UNUM.

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiff is a resident of the County of Los Angeles, State of California while defendant UNUM PROVIDENT is a corporation organized and existing under and by virtue of the laws of the State of Maine which maintains its principal place of business in Chattanooga, Tennessee and defendant PAUL REVERE is a corporation organized and existing under and by virtue of the laws of the State of Massachusetts which maintains its principal place of business in Worcester, Massachusetts.

4.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732, for the defendants conduct business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

-2-
SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

## GENERAL ALLEGATIONS

5.    The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants, and each of them, and DOES 1 through 100,inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes, and thereupon alleges, that each defendant  fictitiously named herein as a DOE was legally responsible, negligently or in some other actionable manner, for the events and happenings, or lack thereof, hereinafter referred to, and thereby proximately caused the injuries and damages to plaintiff as hereinafter alleged.  Plaintiff will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

6.    Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, defendants, and each of them, including DOES 1 through 100, inclusive, were the agents, servants, employees and/or joint venturers of their co-defendants, and were as such acting within the course, scope and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, employee and/or joint venturer, and that each and every defendant has ratified and approved the acts of his or her agents, employees and/or joint venturers by and through its officers, directors and/or managing agents.

7.    On or about June 1, 1975, PAUL REVERE issued a policy  of disability insurance, designated as Policy No. 1759368 hereinafter referred to as the "policy" to plaintiff.  The policy provided, among other things, total and partial disability benefits to plaintiff in the event plaintiff could not perform one or all of his duties and responsibilities as a medical doctor.  Said policy was entered into by the plaintiff within the State of California and required the payment of disability benefits within said jurisdiction for a total amount to be shown at the time of trial.  Plaintiff has paid the premiums due under the policy of insurance to UNUM and PAUL REVERE

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

-3-

SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1  at all relevant times herein, and has performed all obligations under said policy to be

2  performed on plaintiff's part.

3         8.   Plaintiff has suffered a loss compensable under the terms and

4  conditions of the subject policy in that plaintiff has received ongoing medical treatment

5  for, among others, neck and back injuries, including disk bulges at C5-6 and C6-7, and

6  injury to his left wrist all due to accidents, which render him unable to continue his

7  employment as a general medicine physician on a full or part-time basis or to perform

8  any gainful occupation for which he is reasonably fitted based upon his education,

9  training or experience giving due consideration to his economic status at the beginning

10  of disability.

11

12  **FIRST CAUSE OF ACTION**

13  **Breach of Written Contract**

14  **(Against UNUM, PAUL REVERE and**

15  **DOES 1 through 100, inclusive)**

16         9.   Plaintiff realleges as though fully set forth at length and

17  incorporates herein by reference all of the allegations and statements contained in

18  paragraphs 1 through 6, inclusive, of the General Allegations above.

19         10.   On or about June 1, 1975, defendants issued a policy of disability

20  insurance, designated as Policy No. 1759368, to plaintiff whereby plaintiff agreed to

21  pay insurance premiums per year. (A copy of the subject policy is attached hereto as

22  Exhibit 1.) In exchange, defendants promised to provide the plaintiff with disability

23  benefits, effective the first day of the disability, of $3,500 per month for total disability

24  payable for life if the disability was due to accident and until age 65 if disability was

25  caused by sickness.

26         11.   Plaintiff has performed all conditions, covenants and promises

27  required by him on his part to be performed in accordance with the terms and

28  conditions of the policy.

-4-
**SECOND AMENDED COMPLAINT FOR DAMAGES**

1A37.1A

12.    In approximately January 1997, plaintiff filed a claim for disability benefits due him under the policy with the defendants. In or about January 1997, defendants began making payments to the plaintiff pursuant to the total disability provisions contained in the subject policy.

13.    On or about June 17, 1998, defendants terminated plaintiff's claim for disability benefits stating that plaintiff was not totally disabled from his usual and customary employment as a medical doctor. Defendants informed plaintiff by mail that they would continue to handle his claim under the sickness provision, with a benefit period to age 65.

14.    Plaintiff sued defendants in United States District Court, Federal Case No. SACV 00-980. Defendants thereafter agreed to pay plaintiff his disability benefits and both parties agreed to dismiss the case and reserved their respective rights to file a lawsuit if payments were wrongfully terminated at any time thereafter.

15.    On September 17, 2007, plaintiff received a letter from defendant advising him that his disability payments would be cutoff as of December 17, 2007 as plaintiff attained his 65th birthday.

16.    On or about December 17, 2007, defendants breached the terms of the subject policy by terminating the payments to plaintiff despite plaintiff's known disability due to accident and not sickness entitling plaintiff to disability benefits for life.

17.    The act of the defendants in withholding benefits to the plaintiff was a breach of the written agreement entered into between the parties.

18.    As a direct and proximate result of defendants' breach of the written contract, plaintiff has lost and will continue to lose income and interest, in the form of policy benefits and premiums paid, in an amount to be proven at the time of trial, which amount is currently in excess of $35,000, and continuing to accrue at a rate of $3,500 per month for life as well as other additional foreseeable consequential and incidental damages in an amount to be shown at the time of trial.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

-5-
SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against UNUM, PAUL REVERE, and

### DOES 1 through 10, inclusive)

19.    Plaintiff realleges as though fully set forth at length and incorporates herein by reference all of the allegations and statements contained in paragraphs 1 through 6 of the General Allegations and paragraphs 7 through 16 of the First Cause of Action, above.

20.    Defendants owed plaintiff a duty of good faith and fair dealing with respect to all transactions arising under the subject policy.

21.    Defendants have breached their duty of good faith and fair dealing owed to plaintiff in the following respects:

(a)    Delaying and denying payment to plaintiff despite knowing plaintiff's claim under the subject policy was based upon  accident vs. sickness.

(b)    Delaying and denying payment to plaintiff in an amount to be determined despite knowledge that plaintiff's claim for benefits under the subject policy was based upon an accident vs. sickness.

(c)    Not attempting in good faith to evaluate plaintiff's claim for disability coverage and providing payment for said coverage under the provisions of the subject policy;

(d)    Specifically denying in writing and orally plaintiff's request for benefits under the subject policy;

(e)    Forcing the plaintiff to hire attorneys and file a lawsuit in order to obtain the benefits due him;

(f)    Failing to acknowledge and act reasonably and promptly upon communications with respect to the claim arising under said insurance policy;

SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

1         (g)     Failing to adopt and implement reasonable standards for the

2 prompt investigation and processing of claims arising under the subject insurance

3 policy, such as plaintiff's;

4         (h)     Failing to acknowledge plaintiff's claim for benefits for an

5 unreasonable amount of time;

6         (i)     Failing to affirm or deny the plaintiff's claim within a

7 reasonable time after a proof of loss requirement was completed and submitted by the

8 plaintiff;

9         (j)     Not attempting in good faith to effect a prompt, fair and

10 equitable settlement of plaintiff's claim in which liability had become reasonably clear;

11

12         (k)     Engaging the services of medical doctors to provide

13 predetermined and biased opinions that plaintiff was not disabled from his occupation

14 and thereafter relied upon said false opinions to terminate benefits; and

15         (l)     Engaging in a fraudulent practice of targeting "high

16 exposure" claims with reserves in excess of $100,000.00 and denying them without a

17 reasonable basis for damages.

18       22.     Plaintiff is informed and believes and thereupon alleges that

19 defendants have breached their duty of good faith and fair dealing owed to the plaintiff

20 by other acts and omissions of which the plaintiff is presently unaware. Plaintiff will

21 seek leave of court to amend this Complaint at such time as plaintiff discovers the

22 other acts or omissions of said defendant constituting said breach.

23       23.     As a proximate result of the aforementioned wrongful conduct of

24 defendants, plaintiff has suffered anxiety, worry, mental and emotional distress,

25 financial hardship, additional medical expenses, and other incidental damages and

26 out-of-pocket expenses, all to plaintiff's general damage in an amount to be shown at

27 the time of trial.

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1A37.1A

1A37.1A

24.    As a direct and proximate result of the conduct of defendants, as aforesaid, it became reasonably necessary for plaintiff to seek the protection of counsel, and thereby incurred and continues to incur costs and attorneys' fees in an amount to be determined according to proof.

25.    As a further direct and proximate result of the aforementioned acts of defendants, plaintiff has suffered severe physical, mental and psychological pain and anguish.    As a further result thereof, plaintiff has incurred medical expenses in the treatment of said injuries.

26.    As a direct and proximate result of defendants' breach of the implied covenant, plaintiff has lost and will continue to lose income, and interest, in the form of policy benefits, and premium payments in an amount to be proven at the time of trial, which amount is in excess of $35,000 and continuing, as well as other additional foreseeable consequential and incidental damages in an amount to be shown at the time of trial.

27.    Because the acts taken toward plaintiff, as described above, were either committed by or authorized, ratified or otherwise approved by officers, directors or managing agents of these defendants and were carried out in a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury and damage to plaintiff, and done with conscious disregard of plaintiff's rights and with the intent to vex, injure and annoy plaintiff, such as to constitute oppression, fraud or malice under California Civil Code, section 3294, plaintiff requests the assessment of punitive damages against defendants in an amount appropriate to punish or set an example of said defendants.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

### THIRD CAUSE OF ACTION

**Breach of Fiduciary Duties**

**(Against UNUM, PAUL REVERE, Including DOES 1-10)**

28.　Plaintiff realleges as though fully set forth at length and incorporates herein by reference all of the allegations and statements contained in paragraphs 1 through 6 of the General Allegations, paragraphs 7 through 16 of the First Cause of Action, and paragraphs 17 through 25 of the Second Cause of Action, above.

29.　That by issuing said insurance policy to plaintiff and accepting premiums, defendants, and each of them, have created a fiduciary relationship between themselves and plaintiff.　Said fiduciary relationship existed at all relevant times herein.

30.　That defendants, and each of them, have breached their fiduciary duty owed to plaintiff by the acts and omissions set forth in the Second Cause of Action, particularly those set forth in paragraph 19 of the Second Cause of Action, all to plaintiff's damage as set forth herein.

31.　As a direct and proximate result of such conduct of the defendants, and each of them, plaintiff has sustained compensable losses, including past and future disability benefits, premiums paid, additional medical expenses, and other economic losses, and has suffered embarrassment and humiliation, physical and mental and severe emotional distress and discomfort, all to his detriment in an amount in excess of $50,000 which will be stated according to proof.

32.　Because the acts taken toward plaintiff, as described above, were either committed by or authorized, ratified or otherwise approved by officers, directors or managing agents of these defendants and were carried out in a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury and damage to plaintiff, and done with conscious disregard of plaintiff's rights and with the intent to vex, injure and annoy plaintiff, such as to constitute oppression, fraud or malice under California <u>Civil Code</u>, section 3294, plaintiff requests the assessment of punitive

-9-

1A37.1A

1    damages against defendants in an amount appropriate to punish or set an example of

2    said defendants.

3

4                              **FOURTH CAUSE OF ACTION**

5                                  **Declaratory Relief**

6                          **(Against all Defendants and DOES 1-10)**

7           33.    Plaintiff incorporates by reference paragraphs 1 through 6 of the

8    General Allegations, paragraphs 7 through 16 of the First Cause of Action, paragraphs

9    17 through 26 of the Second Cause of Action and paragraphs 26 through 30 of the

10   Third Cause of Action, above.

11          34.    An actual controversy now exists between plaintiff and defendants

12   in connection with the payment of disability benefits to plaintiff because of his

13   accident related injuries.

14          35.    Plaintiff claims his accident related disability entitles him to

15   lifetime benefits. Defendants claim that plaintiff  is entitled to sickness related

16   disability benefits until age 65.

17          36.    Plaintiff requests a declaration that he is entitled to accident related

18   disability benefits for his lifetime rather than to age 65.

19          37.    A judicial declaration is necessary and appropriate at this time due

20   to the dispute as to length and extent of plaintiff's accident related disability benefits.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

-10-
SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

1   WHEREFORE, plaintiff prays judgment against defendants, and each of

2   them, as follows:

3        1.    For the policy benefits, past and future;

4        2.    For premiums paid under the policy;

5        3.    For attorneys' fees incurred in securing amounts due under said

6   policy of insurance;

7        4.    For general damages in an amount as will be shown pursuant to

8   California <u>Code of Civil Procedure</u> section 425.10, which amount is in excess of

9   $75,000, according to proof;

10       5.    For punitive damages in an amount appropriate to punish or set an

11  example of defendants;

12       6.    Declaring that plaintiff is entitled to injury related disability

13  benefits for his lifetime rather than to age 65;

14       7.    For prejudgment interest, according to proof;

15       8.    For costs of suit incurred herein; and

16       9.    For such other and further relief as the Court may deem necessary

17  and proper.

18

19  DATED: February 4, 2009      GREENE BROILLET & WHEELER, LLP

20

21

22                      MARK T. QUIGLEY
                        Attorneys for Plaintiff

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

SECOND AMENDED COMPLAINT FOR DAMAGES

1A37.1A

1

## **DEMAND FOR TRIAL BY JURY**

2
Plaintiff hereby demands a trial by jury.

3

4
DATED:  February 4, 2009                    GREENE BROILLET & WHEELER, LLP

5

6

7
MARK T. QUIGLEY
Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1A37.1A

# EXHIBIT "1"

Modification of coverage, if any

NONE

## POLICY SCHEDULE

Insured            MICHAEL S. MILLER, M.D.

Policy                                                    Date of
Number          1759368       JUNE 1, 1975               Issue

### TABLE OF BENEFITS

| TOTAL DISABILITY | COMMENCEMENT DATE | RATE OF MONTHLY INDEMNITY | MAXIMUM BENEFIT PERIOD |
|---|---|---|---|
| FROM ACCIDENT: | 1ST DAY OF DISABILITY | $3,500.00 | LIFETIME |
| | 1ST DAY OF DISABILITY | $500.00 | 60 MONTHS |
| FROM SICKNESS: | 31ST DAY OF DISABILITY | $3,500.00 | TO AGE 65 |
| | 31ST DAY OF DISABILITY | $500.00 | 60 MONTHS |

BUT SUCH SICKNESS BENEFITS SHALL NOT CONTINUE BEYOND INSURED'S AGE 65, EXCEPT AS HEREIN STATED.

### TABLE OF SUPPLEMENTARY BENEFITS

| SUPPLEMENTARY BENEFITS ATTACHED | AMOUNT OF BENEFITS | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| LOSS OF SPEECH, HEARING, SIGHT, OR USE OF TWO LIMBS | - | LIFETIME | $38.70 |
| PARTIAL DISABILITY INDEMNITY | | | $25.09 |
| ACCIDENT | $2,000.00 PER MONTH | 6 MONTHS | |
| SICKNESS | $2,000.00 PER MONTH | 6 MONTHS | |

### PREMIUM SUMMARY

# EXHIBIT |

| | PRIOR TO AGE 30 BUT AT LEAST FIVE YEARS | THEREAFTER AND PRIOR TO AGE 65 |
|---|---|---|
| ANNUAL PREMIUM FOR SUPPLEMENTARY BENEFITS | $63.79 | $63.79 |
| ANNUAL PREMIUM FOR TOTAL DISABILITY BENEFITS | $1,284.27 | $2,033.75 |
| TOTAL ANNUAL PREMIUM | $1,348.06 | $2,097.54 |
| MODE OF PREMIUM SELECTED: | $112.34 MONTHLY | $174.80 MONTH |

WHILE UNDER EMPLOYEE SECURITY PROGRAM.

PREMIUMS AFTER INSURED'S AGE 65, IF POLICY IS RENEWED AS HEREIN PROVIDED, ARE SUBJECT TO COMPANY'S RIGHT TO CHANGE PREMIUM RATES.

P-35                                                    Printed in U.S.A.



# THE PAUL REVERE
## LIFE INSURANCE COMPANY

WORCESTER, MASSACHUSETTS 01608



Does Hereby Insure the person whose name is shown as the Insured in the Policy Schedule against loss commencing on or after the Date of Issue and while this policy is in force from injury or sickness as defined herein; and agrees to pay the benefits provided, subject to the provisions, exceptions, and limitations contained herein.

Insured

Policy
Number

Date of
Issue

This policy is issued in consideration of the statements made in the application for insurance hereunder, a copy of which is attached to and made a part of this contract, and of the payment of the first premium and the payment of subsequent premiums as herein provided.

**Non-Cancellable and Guaranteed Continuable to Age 65 — No Change in Premium Rates.** This policy is non-cancellable and guaranteed continuable until the premium due date next following the Insured's sixty-fifth birthday by the timely payment of premiums specified herein. The Company, while the policy is in force, cannot place any restrictive rider on the policy or change any policy provision and cannot, while the policy is in force prior to age sixty-five, increase the premium.

**Insured's Renewal Options After Age 65 — Subject to Change in Premium Rates.** See Clause L for benefits and conditions.

**Ten Day Right to Examine Policy.** The Insured is allowed ten days from the date of receipt of this policy to examine its provisions and to surrender it to the Company for a refund of any premium paid. Upon such surrender the policy shall be deemed void from its Date of Issue and any premium paid shall be immediately refunded to the Insured.

The provisions on the subsequent pages hereof and any riders attached to or endorsements on the policy are also a part of this contract.

IN WITNESS WHEREOF, The Paul Revere Life Insurance Company, herein called the Company, has caused this policy to be executed at Worcester, Massachusetts, on its Date of Issue.

*John H. Budd*
Secretary

*Aubrey K. Reid Jr.*
President

Countersigned by ........ *LJ Couture* ........

0000022

0015

CHARTERED IN MASSACHUSETTS

811C

THE PROFESSIONAL EXECUTIVE POLICY

72-1

Definitions. Wherever used his policy:

"Injury" means accidental bodily injury sustained while this policy is in force.

"Sickness" means sickness or disease which first manifests itself while this policy is in force.

"Insured's Birthday" means the premium due date coinciding with or next following the Insured's birthday.

"Total Disability" means that, as a result of such injury or sickness, the Insured is completely unable to engage his regular occupation; however, after Monthly Indemnity has been payable hereunder during any continuous period of disability to the Insured's fifty-fifth birthday or for a period of sixty months, whichever is the longer, then during the remainder, if any, of the period for which Monthly Indemnity is payable, "total disability" shall mean complete inability of the Insured as a result of such injury or sickness to engage in any gainful occupation for which he is reasonably fitted by education, training or experience, giving due consideration to his economic status at the beginning of disability.

## Benefit Provisions

**A. Total Disability — Accident.** If such injury results in continuous total disability and requires the regular and personal attendance of a licensed physician, the Company will pay periodically the Monthly Indemnity for Total Disability from Accident at the rate set forth in the Policy Schedule, beginning with the stated commencement date for accident and during the continuance of such total disability for a period not exceeding the Maximum Benefit Period for Total Disability from Accident specified in the Policy Schedule; except that if such disability covered under this clause commences while this policy is in force after the Insured attains age sixty-five, the Monthly Indemnity for Total Disability from Accident will be paid during such continuous disability for a period not exceeding twenty-four months or the period set forth for the Monthly Indemnity for Total Disability from Accident in the Policy Schedule if for a lesser period.

**B. Total Disability — Sickness.** If such sickness results in continuous total disability while this policy is in force and requires the regular and personal attendance of a licensed physician, the Company will pay periodically the Monthly Indemnity for Total Disability from Sickness at the rate set forth in the Policy Schedule, beginning with the stated commencement date for sickness and during the continuance of such total disability for a period not exceeding the Maximum Benefit Period for Total Disability from Sickness specified in the Policy Schedule but not beyond the Insured's sixty-fifth birthday; except that if such disability covered under this clause commences while this policy is in force after the Insured's sixty-third birthday, the Monthly Indemnity for Total Disability from Sickness will be paid during such continuous disability for a period not exceeding twenty-four months or the period set forth for the Monthly Indemnity for Total Disability from Sickness in the Policy Schedule if for a lesser period.

**C. Total Disability — Loss of Speech, Hearing, Sight or Use of Two Limbs.** If, as a result of such injury or such sickness, the Insured sustains the entire and irrecoverable loss of speech or hearing or sight of both eyes, or the irrecoverable loss of use of both hands or both feet, or the irrecoverable loss of use of one hand and one foot, the Company will waive the requirement of total disability and the requirement of the regular and personal attendance of a licensed physician and will pay the Monthly Indemnity payable under Clause A or Clause B, as the case may be, for the Maximum Benefit Period specified in such applicable clause.

**D. Total Disability — Cosmetic or Transplant Surgery.** If, while this policy is in force and more than six months after its Date of Issue, the Insured becomes totally disabled as a result of cosmetic surgery or as a result of the transplant of a part of his body to the body of another person, such total disability will be deemed to have resulted from sickness and will be indemnified as such under Clause B. For the purpose of this clause cosmetic surgery shall mean any surgical operation to improve the appearance of the Insured or to prevent disfiguration. Cosmetic surgery necessitated by an injury sustained while the policy is in force will not be subject to the six-month waiting period of this Clause D.

**E. Rehabilitation.** If, during a period of disability for which the Monthly Indemnity for Total Disability is payable, the Insured becomes gainfully employed as a participant in a recognized vocational rehabilitation program, the Company will waive the requirement of total disability and the requirement of the regular and personal attendance of a licensed physician and will pay the Monthly Indemnity for Total Disability payable under Clause A or Clause B, as the case may be, while the Insured continues to be an active participant in such rehabilitation program but for a

0016

period not to exceed twenty-four months or the remaining unused portion of the Maximum Benefit Period for Total Disability applicable to such disability if for a lesser period.

Upon completion of such rehabilitation program, or if he ceases to be an active participant therein, the Insured's eligibility to receive further payments of the Monthly Indemnity for Total Disability for any remaining unused portion of the Maximum Benefit Period for such accident or sickness shall be determined in accordance with Clause A or Clause B, as the case may be.

For the purpose of this Clause E, recognized vocational rehabilitation programs are: (1) any planned vocational rehabilitation training program operated or sponsored by the United States government or by any state government, and (2) any other planned vocational rehabilitation training program approved by the Company prior to commencement of the Insured's participation therein.

## Premium Provisions

F. **Premiums.** The first premium on this policy is payable on the Date of Issue of this policy, and from this date subsequent premiums are payable periodically thereafter in advance until the Insured's sixty-fifth birthday, according to the mode of premium payment selected and in the amount specified in the Policy Schedule. After age sixty-five, the premium then applicable may be paid in accordance with and subject to Clause L.

Premiums may be paid annually, semi-annually, or quarterly at the applicable rates in use by the Company on the Date of Issue of this policy. Premiums may also be paid monthly in accordance with the Company's then existing rules. A change from one to another in such mode of paying premiums, with respect to premiums not yet paid, will be allowed on written request to the Company while the Insured is not disabled. Premiums are payable at the Home Office of the Company in Worcester, Massachusetts, or to an agent authorized by the Company to collect the premium then payable. Subject to the "Grace Period" provision, the payment of any premium shall not maintain this policy in force beyond the last day of the premium period to which such premium applies.

G. **Grace Period.** A grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.

H. **Waiver of Premium and Premium Refund.** If such injury or such sickness results in continuous total disability for a period of ninety consecutive days, the Company will waive the payment of any premium which thereafter becomes due while the Insured remains continuously totally disabled, and the Company will refund any premium paid which became due after such disability commenced. After the termination of the period of total disability during which a premium has been waived, the insurance afforded in this policy shall continue in full force and effect until the next premium due date at which time the Insured shall have the right to resume payment of premium as provided in this policy. This clause shall not apply to any premiums payable for any benefit after Option 2 of Clause L becomes effective.

## Additional Provisions

I. **Recurrent Disability.** If, within six months following a period of disability for which the Monthly Indemnity for Total Disability has been paid, the Insured suffers a recurrence of total disability from the same or related cause or causes, such subsequent total disability will be deemed a continuance of the preceding total disability and indemnified as such. If, however, following a period of disability for which the Monthly Indemnity for Total Disability has been paid, the Insured has resumed his regular occupation or has engaged on a full-time basis in any gainful occupation for which he is reasonably fitted and performed all the important duties thereof for a continuous period of six months or more, during which period no Monthly Indemnity was paid under this policy, any subsequent total disability resulting from the same or related cause or causes will be considered a new disability and indemnified as such.

J. **Concurrent Disabilities.** The Company will not be liable hereunder for both accident and sickness indemnity for any one period of disability, and any period of disability from sickness resulting from one or more causes shall be considered as a single period of disability and any benefits payable hereunder shall be determined on the basis of such single period of disability.

K. **Not Covered.** This policy does not cover disability due to an act or accident of war, declared or undeclared.

L. Insured's Renewal Options After Age 65 — Subject to Change in Premium Rates.

OPTION 1. RENEWAL OPTION IF EMPLOYED AFTER AGE 65. REDUCED BENEFIT PERIOD. If the Insured continues to be actively and regularly employed full time after his sixty-fifth birthday and if the policy is then in force, he may elect to have this policy continued in force on each premium due date, but for not more than seven years beyond his sixty-fifth birthday, by the periodic payment of the premiums at the Company's applicable table of premium rates in effect for the Insured on the respective premium due dates, which rates are subject to change by the Company at any time.

The benefits payable for loss commencing after the Insured's sixty-fifth birthday, if the policy is continued under this Option 1, will be the same benefits and subject to the same provisions, exceptions, and limitations contained in this policy except that the maximum benefit period for which the Monthly Indemnity for Total Disability will be payable for accident or sickness, as the case may be, will be two years or the period set forth in the Policy Schedule for such accident or such sickness if for a lesser period.

For the purposes of this Option 1:

"Injury" shall mean accidental bodily injury sustained while this Option is in force which results in continuous total disability within twenty days of such injury.

"Actively and regularly employed full time" shall mean that the Insured is working a normal work week of at least thirty hours per week at his normal place of business.

The Company reserves the right to require proof from time to time after age sixty-five that the Insured has continued to be actively and regularly employed full time. Any premium paid to the Company hereunder after age sixty-five will continue the policy in force until the end of the period for which the premium was accepted or may be applied at the request of the Insured to the premiums payable for the benefit under Option 2 of this Clause L. If Option 2 becomes effective, provisions of Option 1 may not thereafter be elected by the Insured.

OPTION 2. RENEWAL OPTION IF NOT EM-PLOYED AFTER AGE 65. HOSPITAL CONFINE-MENT INDEMNITY BENEFIT. If the Insured is not so actively and regularly employed full time after age sixty-five, or if he ceases to be so employed after such birthday or if he attains his seventy-second birthday, whichever shall first occur while this policy is in force, he may elect to continue the policy during his remaining lifetime for the hos-pital confinement indemnity benefit as hereinafter set forth by the periodic payment of the premiums at the Company's applicable table of premium rates in effect for the Insured on the respective premium due dates which rates are subject to change by the Company at any time. Premiums will be the same for all Insureds under this Option.

The benefits payable for loss commencing after the Insured's sixty-fifth birthday, if the policy is continued under this Option 2, will be limited to a hospital confinement indemnity equal to the Monthly Indemnity for Total Disability from Sick-ness specified in the Policy Schedule, or Five Hundred Dollars per month, whichever is the lesser, payable while the Insured is confined as a result of such injury or such sickness within a legally operated hospital, beginning with the con-finement date and for a period not to exceed six months during each continuous disability.

Periods of disability resulting from the same or related cause or causes, not separated by the Insured's resumption of full normal activities for a continuous period of at least twelve months, will for the purposes of this Option 2 be considered as one continuous disability.

The word "hospital", for the purposes of this Option 2, does not include any facility of the Vet-erans Administration or any institution for con-valescence, nursing home care, rest cure, care for the aged, or for care or treatment of mental disorders or psychoneurosis.

If this policy is continued after age sixty-five under this Option 2, the benefits payable for loss thereafter commencing shall be subject to the same provisions, exceptions, and limitations con-tained in this policy except that Clause H and Clause I shall not apply and the hospital confine-ment indemnity provided herein shall be in lieu of any other benefits provided under this policy or, under any supplementary benefit attached hereto except as may be specifically stated other-wise in any such supplementary benefit.

## General Provisions

Entire Contract; Changes. This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

Incontestable. (a) After this policy has been in force for a period of two years during the life-time of the Insured, it shall become incontestable as to the statements contained in the application.

(b) No claim for loss incurred or disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

Reinstatement. If any renewal premium be not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy; pro-vided, however, that in no event shall evidence of insurability be required for any reinstatement requested by the Insured by notice received by the Company, at its Home Office, Worcester, Massachusetts, within fifty-seven days from the date the first unpaid premium was due, and pro-

video further that if the request for reinstatement is received after such fifty-five days and if the Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. In all other respects the Insured and Company shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

Any premium accepted in connection with a reinstatement of coverage under Option 1 of Clause 'L shall be applied to a period for which premium has not previously been paid, but not to a period more than 60 days prior to the date of reinstatement.

**Notice of Claim.** Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured to the Company at its Home Office, Worcester, Massachusetts, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**Claim Forms.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss.** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss covered by any attached supplemental benefits within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event,

except in the absence or legal capacity, later than one year from the time proof is otherwise required.

**Time of Payment of Claims.** Indemnities payable under any attached supplemental benefits for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued indemnities for loss for which this policy and any attached supplemental benefits provide periodic payment will be paid at the expiration of each thirty days and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims.** All indemnities of this policy will be payable to the Insured. If any indemnity of this policy shall be payable to the estate of the Insured, or to an Insured who is a minor or otherwise not competent to give a valid release, the Company may pay such indemnity, up to an amount not exceeding One Thousand Dollars, to any relative by blood or connection by marriage of the Insured who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

**Assignment.** No assignment of this policy or of any claim hereunder shall bind the Company unless the same be received at its Home Office prior to the payment of any indemnity claimed, and the Company assumes no responsibility for the validity of any assignment.

**Physical Examinations and Autopsy.** The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law.

**Legal Actions.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Misstatement of Age.** If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

**Conformity With State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

811C                    THE PROFESSIONAL EXECUTIVE POLICY                    PAGE 5

Amendment to Policy

The policy to which this Amendment is attached is hereby amended by deleting the definition of "Total Disability" of said policy and substituting therefor the following:

"Total Disability" means that, as a result of such injury or sickness, the Insured is unable to perform the duties of his regular occupation; however, after Monthly Indemnity has been payable hereunder during any continuous period of disability to the Insured's sixty-fifth birthday, then during the remainder, if any, of the period for which Monthly Indemnity is payable, "total disability" shall mean complete inability of the Insured as a result of such injury or sickness to engage in any gainful occupation for which he is reasonably fitted by education, training or experience, giving due consideration to his economic status at the beginning of disability.

The provisions, exceptions, and limitations of the attached policy remain the same, except as otherwise provided herein.

Executed at Worcester, Massachusetts, on the Date of Issue of the policy to which this Amendment is attached and forms a part, or on the date stated hereon if issued subsequent to the Date of Issue of the policy.

THE PAUL REVERE LIFE INSURANCE COMPANY

*J. L. Moorefield*
Secretary

Form A&S 547                                    71-4 Printed in U.S.A.

## LOSS OF SPEECH, HEARING, SIGHT, OR USE OF TWO LIMBS –
### LIFETIME BENEFIT POLICY AMENDMENT

The policy to which this Benefit is attached is hereby amended so as to delete the provisions of Clause C from the policy and to substitute the following therefor:

> "C. LOSS OF SPEECH, HEARING, SIGHT, OR USE OF TWO LIMBS. If, prior to the premium due date coinciding with or next following the Insured's sixty-fifth birthday, as a result of such injury or such sickness, the Insured sustains the entire and irrecoverable loss of speech or hearing or sight of both eyes, or the irrecoverable loss of use of both hands or both feet, or the irrecoverable loss of use of one hand and one foot, the Company will waive the requirement of total disability and the requirement of the regular and personal attendance of a licensed physician and will pay the Monthly Indemnity payable under Clause A or Clause B, as the case may be, for so long as the Insured shall live."

This Benefit shall terminate on the premium due date coinciding with or next following the Insured's sixty-fifth birthday or when the policy terminates, if earlier. In all other respects the provisions, exceptions, and limitations of the said policy remain the same, except as otherwise provided herein.

The annual premium for this Benefit is stated in the Policy Schedule of the policy to which the Benefit is attached.

EXECUTED at Worcester, Massachusetts, on the Date of Issue of the policy to which this Benefit is attached and forms a part, or on the date stated hereon if issued subsequent to the Date of Issue of the policy.

THE PAUL REVERE LIFE INSURANCE COMPANY

*J. L. Moorefield*
Secretary

FORM H709A CALIF.

71-2 Printed in U.S.A.

## PARTIAL DISABILITY INDEMNITY — ACCIDENT AND SICKNESS BENEFIT

**Partial Disability Accident Benefit.** If while the policy and this Benefit are in force the Insured sustains an accidental bodily injury and such injury results in continuous partial disability from the date of the accident, or immediately following a period of total disability for which the Monthly Indemnity for Total Disability from Accident is payable under the policy, and such partial disability requires the regular and personal attendance of a licensed physician, the Company will pay periodically the Partial Disability Indemnity Accident Benefit at the monthly rate specified in the Table of Supplementary Benefits of the Policy Schedule beginning with the commencement date for accident stated in the Policy Schedule for total disability or with the day immediately following termination of total disability, whichever is the later, and during the continuance of such partial disability but for a period not exceeding six months.

**Partial Disability Sickness Benefit — Following Compensible Total Disability.** If while the policy and this Benefit are in force the Insured suffers a sickness and such sickness results in continuous partial disability which immediately follows a period of total disability for which the Monthly Indemnity for Total Disability from Sickness is payable under the policy, and such partial disability requires the regular and personal attendance of a licensed physician, the Company will pay periodically the Partial Disability Indemnity Sickness Benefit at the monthly rate specified in the Table of Supplementary Benefits of the Policy Schedule beginning with the commencement date for sickness stated in the Policy Schedule for total disability or with the day immediately following termination of total disability, whichever is the later, and during the continuance of such partial disability but for a period not exceeding six months.

**Definition.** "Partial Disability" means the inability of the insured to perform the regular daily duties of his occupation at least one-half of the time usually required in that occupation or the inability to perform one or more of the important regular duties of his occupation.

This Benefit shall terminate when the policy terminates. Also, if the policy to which this Benefit is attached contains a provision captioned "Renewal Option If Not Employed After Age 65", or a similar caption specifying another age, this Benefit shall not apply after such provision becomes effective. In all other respects the provisions, exceptions, and limitations of the said policy remain the same, except as otherwise provided herein.

The annual premium for this Benefit is stated in the Policy Schedule of the policy to which this Benefit is attached.

EXECUTED at Worcester, Massachusetts, on the Date of Issue of the policy to which this Benefit is attached and forms a part, or on the date stated hereon if issued subsequent to the Date of Issue of the policy.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Bundl*

Secretary

FORM H712 CALIF.

71-2 PRINTED IN U.S.A.

**PROOF OF SERVICE**
(C.C.P. 1013A, 2015.5)

**STATE OF CALIFORNIA**

I am employed in the county of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 100 Wilshire Boulevard, 21st Floor, Santa Monica, California 90401.

On **February 5, 2009** I served the foregoing document, described as **SECOND AMENDED SUMMONS AND SECOND AMENDED COMPLAINT** on the interested parties in this action

   **X**   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

   **X**   by placing ____ the original  **X**  a true copy enclosed in sealed envelopes addressed as follows:

   **\*\*SEE ATTACHED SERVICE LIST.**

 **X**   **BY MAIL.**
          ____ I deposited such envelope in the mail at Santa Monica, California. The envelope was mailed with postage thereon fully prepaid.

          **X** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **February 5, 2009** at Santa Monica, California.

____ **BY PERSONAL SERVICE.** I delivered such envelope by hand to the offices of the addressee.

____ **BY FACSIMILE.** I faxed a copy of the above-described document to the interested parties as set forth [above/on the attached mailing list].

Executed on **February 5, 2009** at Santa Monica, California.

   **X**   **(Federal)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**SUSAN KIM IGO** _____          _____
**Name**                                    Signature

1

**SERVICE LIST**
**MICHAEL S. MILLER, M.D. vs. UNUM LIFE INSURANCE, et al.**
**CASE NO. SACV 08-1420 JVS(RNBx)**

2

3

4  David J. Layden
   Assistant Vice President & Sr. Counsel
5  Law Department
   UNUM
6  18 Chestnut Street
   Worcester, MA. 01608
7  Attorneys for Defendants, UNUM LIFE INSURANCE COMPANY
   OF AMERICA; THE PAUL REVERE LIFE INSURANCE COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  2/5/09 ski

28